**CAROL A. SOBEL**, SBN 84483
**MONIQUE A. ALARCON,** SBN 311650
**LAW OFFICE OF CAROL SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
(t) 310-393-3055
(e) carolsobel@aol.com
(e) monique.alarcon8@gmail.com

**PAUL HOFFMAN**, SBN 71244
**CATHERINE SWEETSER**, SBN 271142
**SCHONBRUN SEPLOW HARRIS & HOFFMAN, LLP**
11543 W. Olympic Boulevard
Los Angeles, CA 90064
(t) 310-396-0731
(f) 310-399-7040
(e) hoffpaul@aol.com
(e) csweetser@sshhlaw.com

*Attorneys for Plaintiff,*
*DARREN "PETE" WHITE.*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN "PETE" WHITE,<br><br>                    Plaintiff,<br><br>          v.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>                    Defendants. | Case No.: 2:17-cv-3306-SJO-MRW<br><br>**MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date: August 21, 2018<br>Time: 9:00 a.m.<br>Dept.: 10C (Hon. S. James Otero)<br><br>**Complaint filed: May 3, 2017** |

# **TABLE OF CONTENTS**

I.  STATEMENT OF FACTS .................................................................1

II. CLAIMS AND DEFENSES .............................................................4

     (a)    Summary Statement of Claims..................................................4

     (b)    Elements of Claims .................................................................5

     (c)    Evidence supporting these claims: .........................................6

III.  ISSUES OF LAW ........................................................................7

     A.     VIOLATION OF FIRST AMENDMENT RIGHTS AND
             CALIFORNIA CONSTITUTION, ART. I, SEC. 2, 3 ........................7

     B.     PLAINTIFF DID NOT VIOLATE PC §148 ......................................7

           1.   The elements of a PC §148 violation............................................7

           2.   No facts evinced Plaintiff violated a "lawful" order ...................8

           3.   The failure to comply with an order with "alacrity" does not
               support a violation of PC §148 ......................................................9

           4.   The Use of Profanity will not Support an Arrest ...........................9

     C.     PLAINTIFF WAS UNLAWFULLY ARRESTED AND SEIZED IN
             VIOLATION OF THE FOURTH AMENDMENT AND
             CALIFORNIA CONSTITUTION ART. I, SEC. 7 ...........................10

     D.     DEFENDANTS VIOLATED THE BANE ACT BY INTERFERING
             WITH PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS
             CONSTITUTIONAL AND STATUTORY RIGHTS ......................10

     E.     PLAINTIFF WAS FALSELY ARRESTED AND IMPRISONED ...12

     F.     PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES ...12

*TABLE OF CONTENTS - CONTINUED*

G.    PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AGAINST SGT. KINNEY ...................................................................13

VI. BIFURCATION OF ISSUES ...................................................14

VII. JURY TRIAL ........................................................................14

VIII. ATTORNEY'S FEES .............................................................14

IX. ABANDONMENT OF ISSUES .............................................14

X. ABANDONED PARTIES ..........................................................15

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# TABLE OF AUTHORITIES

*Federal Cases*

*Blankenhorn v. City of Orange*,
  485 F.3d 463 (9th Cir. 2007) ............................................................... 12

*City of Houston v. Hill*,
  482 U.S. 451 (1987) .................................................................... 9, 10

*Dang v. Cross*,
  422 F.3d 800 (9th Cir. 2005) ......................................................... 13, 14

*Duran v. City of Douglas, Ariz.*,
  904 F.2d 1372 (9th Cir. 1990) ............................................................. 10

*Ford v. City of Yakima*,
  706 F.3d 1188 (9th Cir. 2013) .............................................................. 7

*Fordyce v. City of Seattle*,
  55 F3d 436 (9th Cir. 1995) ................................................................. 7

*Gant v. City of Los Angeles*,
  772 F.3d 608 (9th Cir. 2014) .............................................................. 10

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323, (1974) ..................................................................... 13

*Hazle v. Crofoot*,
  727 F.3d 983 (9th Cir.2013) .............................................................. 13

*Mackinney v. Neilsen*,
  69 F.3d (9th Cir. 1991) ................................................................... 9

*Maxwell v. Cnty. of San Diego*,
  708 F.3d 1075 (9th Cir. 2013) ............................................................. 8

*Memphis Community School Dist. v. Stachura*,
  477 U.S. 299 (1986) ..................................................................... 13

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Federal Cases- Continued*

*Reed v. Lieurance*,
  863 F.3d 1196 (9th Cir. 2017) ................................................................. 8

*Reese v. County of Sacramento*,
  888 F.3d 1030 (9th Cir. 2018) ............................................................... 11

*Robinson v. Solano Cnty.*,
  278 F.3d 1007(9th Cir. 2002) ............................................................... 12

*Skoog v. City of Clackamas*,
  469 F.3d 1121, 1231-32 (9th Cir. 2006) (9th Cir. 2006)........................ 7

*Smith v. City of Hemet*,
  394 F.3d 689 (9th Cir. 2005) ............................................................. 8, 9

*Smith v. Wade*,
  461 U.S. 30 (1983)................................................................................ 13

*State Cases*

*Cervantez v. J.C. Penney Co.*,
  24 Cal. 3d 579 (1979) ........................................................................... 12

*Garcia v. Superior Court*,
  177 Cal.App.4th 803 (2009) ............................................................... 7, 8

*In re Amanda A.*,
  242 Cal. App. 4th 537 (2015) .............................................................. 8-9

*In re Manuel G.*,
  16 Cal. 4th 805, (1997) .......................................................................... 8

*Katzberg v. Regents of the Univ. of Calif.*,
  29 Cal. 4th 300 (2002)........................................................................... 12

*North American Chemical Co. v. Superior Court*,
  59 Cal. App. 4th 764 (1997) ................................................................. 13

iv

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

*Federal Cases- Continued*

*People v. Quiroga,*
  16 Cal. App. 4th 961 (1993) ................................................................ 9

*People v. Wetzel,*
  11 Cal. 3d 104, (1974) ..................................................................... 9

*Simmons,*
  7 Cal.App.5th 1113 (2016) ................................................................ 10

*Venegas v. County of Los Angeles,*
  32 Cal. 4th 820 ............................................................................ 11

*Venegas v. County of Los Angeles,*
  153 Cal. App. 4th 1230 (2007) ........................................................... 12

*Federal Statutes*

42 U.S.C. § 1988 .............................................................................. 14

*State Statutes*

Cal. Civ. Code §52.1 ........................................................... 4, 10, 11, 14

Cal. Civ. Code § 3333 ......................................................................... 13

Cal. Code Civ. Proc. § 1021.5 ............................................................... 14

Cal. Gov't. Code §853.6 ....................................................................... 4

California Government Code §820.4 .......................................................... 12

California Penal Code § 148(g) ............................................................... 8

California Penal Code § 148(a)(1) ........................................................... 8

*Federal Rules*

Fed. R. Civ. Proc. 38 ......................................................................... 14

v

*Other Authorities*

CACI No. 1402 ................................................................................... 12

Ninth Circuit Model Civil Jury Instr. 5.5................................................ 14

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## I.    STATEMENT OF FACTS

Plaintiff Darren "Pete" White is the founder and executive director of the Los Angeles Community Action Network (LA CAN), an organization on Skid Row dedicated to addressing homelessness.  He was arrested on Skid Row on June 14, 2016 while attempting to video tape and monitor an arrest of a homeless individual in a tent that occurred during a street cleaning.  The incident occurred at the intersection of Sixth and San Julian Streets.

Plaintiff arrived on the scene after receiving a call from someone already at the location.  There were other individuals present who were there to monitor the City's implementation of the stipulation in *Mitchell v. City of Los Angeles.* Plaintiff traveled to the location to observe the police because the interaction between the police and the homeless individual in the tent was similar to one that occurred a year earlier. The prior incident ended with the police fatally shooting a homeless man known as Brother Africa when he refused to come out of his tent. Plaintiff was also concerned because the LAPD officer who killed Brother Africa was involved in the June incident, even though Plaintiff had been told in meetings with LAPD command staff that the officer was transferred out of Skid Row.

At Sixth Street and San Julian, City employees put up a yellow tape in an "L" shape across the south side of the intersection, with an extension across the southwest sidewalk blocking westward movement toward Wall.  When Plaintiff arrived, he had a video camera with him.  He was on Sixth Street, behind the short leg of the "L," but in front of the tape across San Julian.  There were other people videotaping on the Sixth Street sidewalk, in front of both tapes.  FAC Ex. 2.

Sometime after Plaintiff started videotaping, Defendant Sgt. Kinney ordered him to get behind the tape.  Plaintiff complied.  He was behind the tape when he was arrested.

A few minutes after Plaintiff was ordered to get behind the tape, Sgt. Kinney looked at Plaintiff and again shouted at him to get behind the tape.  Plaintiff

---

1

responded that he was behind the tape.  Plaintiff had only his right arm, holding the video camera, extended over the tape so that he could videotape the incident taking place on the sidewalk. Nothing more was said between Sgt. Kinney and Plaintiff. At the time, Sgt. Kinney was near the area where the officers were extracting the homeless individual from his tent.  Plaintiff was located about 80 feet away from this action.  At no time was Plaintiff closer than approximately 45-50 feet from the incident.

Defendants contend that, when he was given the second order, although he was behind the tape, Plaintiff's entire body was pushing the yellow police-line tape out approximately 8 feet.  Plaintiff disputes those allegations and counters that it would have been impossible to do that because a police patrol car was parked in front of the tape, taking up most of the width of narrow street.  FAC Ex. 3.  To push the tape out as Defendant Kinney described in the police report, Plaintiff would have to be on top of the police car and, even then, it is doubtful that there is sufficient flexibility in the tape to extend it 8 feet without causing it to break.

Plaintiff continued to stay behind the tape on San Julian.    At one point, Sgt. Kinney walked to the north side of Sixth Street and warned other individuals that had previously been in the street that they would be arrested if they crossed the line again.  He then walked over to the south side of Sixth Street and asked Plaintiff for his identification, which Plaintiff handed to him.  When Sgt. Kinney approached Plaintiff and ordered him to give his identification, Plaintiff was behind the yellow tape, attempting to videotape Defendant Kinney.  Sgt. Kinney took Plaintiff's identification with him and went back to the area of the tent incident.  After a while, Mr. White called out to Sgt. Kinney and asked that his identification be returned to him.

A short time later, Sgt. Kinney again returned to the southeast corner of 6th and San Julian and spoke to a group of men who were standing there.  They were on the public sidewalk and past the tape, yet Sergeant Kinney told them they

needed to get behind the tape.  Mr. White videotaped Sgt. Kinney doing this, all the time remaining behind the tape.   Sgt. Kinney then walked a few feet back to Mr. White and ordered him arrested.  The entire interaction between Plaintiff and Sgt. Kinney lasted approximately 10 to 15 minutes.

Defendants contend that one reason for the police tape is to protect the public from the "chemicals" used to clean the sidewalks.  This could not be the basis for justifying Mr. White's arrest since, when he was first ordered to get behind the tape and complied, the City personnel who applied the "chemicals" had not arrived.  At the time of his arrest, he was approximately 40 feet from where the closest point where the clean-up was occurring and approximately 80 feet from the tent incident.  There were numerous individuals much closer to the "chemicals," which Plaintiff believes is simply a mixture of chlorine and water.  Exhibit 4 of the FAC shows an individual sitting on the sidewalk, in a wheelchair, just inches from the corner where the cleaning solutions are being used.

Plaintiff was arrested, handcuffed and "perp" walked to Central Station where he was held in a cell, tightly handcuffed, while Defendants discussed what violation of the law to charge him with.   After some time, Plaintiff was transferred to the Metropolitan Detention Center on Los Angeles Street, where he was again put in a cell, still tightly handcuffed.   After approximately 4 hours from the time of his arrest, he was booked on a charge of violating California Penal Code §148, "resisting arrest," issued a Notice to Appear and released without posting bail.   He was not prosecuted on the charge.  Plaintiff alleges that his arrest was unlawful because he complied with the order to get behind the tape and did nothing that could even marginally be considered to constitute "resisting arrest."

//

//

//

//

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

## II.   CLAIMS AND DEFENSES

(a) **Summary Statement of Claims**

1. **Claim 1: Violation of First Amendment; CA Constitution Ar. 1, §2, 3:** Defendant Kinney violated Plaintiff White's First Amendment rights when he ordered his arrest for videotaping him. Moreover, Defendant City of Los Angeles caused this arrest by failing to train officers on First Amendment rights.

2. **Claim 2: Retaliation in Violation of the First Amendment; CA Constitution Ar. 1, §2:** Defendant Kinney violated Plaintiff White's First Amendment rights when he ordered his arrest in retaliation for past statements by his organization and in retaliation for videotaping him. Moreover, Defendant City of Los Angeles caused this arrest by failing to train officers on First Amendment rights.

3. **Claim 3: Unlawful Seizure in Violation of the Fourth Amendment; CA Const. Art. I, § 7:** Defendant Kinney unlawfully seized Plaintiff White when he ordered his arrest without probable cause. Moreover, Defendant City of Los Angeles caused this arrest by failing to train officers on what resisting, delaying or obstructing an officer is and by encouraging officers to use this category as a catch-all violation.

4. **Claim 4: Violation of the Fourteenth Amendment:** Defendant Kinney unlawfully seized Plaintiff in violation of Cal. Gov't. Code §853.6. This violated his Fourteenth Amendment rights. Defendant City of Los Angeles caused this arrest by maintaining a policy that people may be arrested for minor misdemeanors.

5. **Claim 5: Violation of Cal. Civ. Code §52.1:** Defendant Kinney used threats, intimidation, and coercion to keep Plaintiff from exercising his First Amendment rights. Defendant City of Los Angeles is vicariously liable for Defendant Kinney's actions.

6. **Claim 6: False Imprisonment:** Defendant Kinney falsely imprisoned Plaintiff. Defendant City of Los Angeles is vicariously liable for Defendant Kinney's actions.

7. **Claim 7: False Arrest Without Warrant by Peace Officer:** Defendant Kinney falsely arrested Plaintiff without a warrant. Defendant City of Los Angeles is vicariously liable for Defendant Kinney's actions.

**(b) Elements of Claims**

1. **Claim 1:**

   a. The Plaintiff engaged in protected conduct under the First Amendment

   b. The defendant took action against the plaintiff

   c. Stopping the Plaintiff's protected conduct was a substantial or motivating factor for the defendant's action.

2. **Claim 2:**

   a. The Plaintiff and his organization engaged in protected conduct under the First Amendment

   b. The defendant took action against the Plaintiff

   c. Retaliating against the Plaintiff for Plaintiff's and his organization's protected conduct was a substantial or motivating factor for the defendants' action.

3. **Claim 3:**

   a. Defendant Kinney seized the plaintiff's person;

   b. In seizing the Plaintiff's person, Defendant Kinney acted intentionally;

   c. The seizure was unreasonable.

4. **Claim 4:**

   a. Defendant Kinney seized the Plaintiff's person;

//

      b. Defendant Kinney's seizure of Plaintiff's person was contrary to state law.

5. **Claim 5:**

      a.  Defendants used threats, intimitdation, or coercion to interfere or in an attempt to interfere with the Plaintiff's exercise or enjoyment of rights secured by the laws of California;

      b. The interference caused Plaintiff to suffer injury, damage, loss, or harm.

6. **Claim 6:**

      a. The City of Los Angeles held the plaintiff in custody

      b. Plaintiff should not have been held in custody at all, or there was an unnecessary delay in releasing the plaintiff

      c. Plaintiff did not consent to the delay

      d. Plaintiff was harmed.

7. **Claim 7:**

      a. Defendant Kinney arrested Plaintiff White without a warrant

      b. Plaintiff White was actually harmed

      c. Defendant Kinney's conduct was a substantial factor in causing Plaintiff's harm.

**(c) Evidence supporting these claims:**

The evidence for these claims is the same for each claim, and consists of the testimony of the involved parties and of witnesses at the scene, the video of the incident, photographic stills from the video of the incident, the arrest and watch commander report, the citation issued to Mr. White, and the adult detention log.

//

//

//

**III.   ISSUES OF LAW**

      **A. VIOLATION OF FIRST AMENDMENT RIGHTS AND**

         **CALIFORNIA CONSTITUTION, ART. I, SEC. 2, 3**

     Plaintiff has a lawful right to be present on a public street and videotape the activity of the police.  *Fordyce v. City of Seattle*, 55 F3d 436, 439 (9th Cir. 1995); *Skoog v. City of Clackamas*, 469 F.3d 1121, 1231-32 (9th Cir. 2006); and, *Ford v. City of Yakima,* 706 F.3d 1188, 1193 (9th Cir. 2013).

     Even if there was probable cause, this was a retaliatory arrest based on the fact that the arresting officer admittedly knew that Mr. White was affiliated with LA CAN and the arresting officer knew that LA CAN was monitoring police activity.  The arresting officer stated that members of LA CAN had called him names in the past, and chose to arrest Mr. White alone even though other people whom he did not believe to be part of LA CAN had violated the posted tape in much more egregious ways.  The existence of probable cause is no defense.  *Ford*, 706 F.3d at 1196.  Moreover, Sergeant Kinney could have cited and released Mr. White, but chose to arrest him.  *Id.*

      **B. PLAINTIFF DID NOT VIOLATE PC §148**

        **1.   The elements of a PC §148 violation**

     The elements of a §148 violation, are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties."  *Garcia v. Superior Court*, 177 Cal.App.4th 803, 818 (2009).

     In 2015, the California Legislature amended Penal Code § 148 to add subsection "(g)" to specifically provide that, standing alone, it is not, sufficient to constitute obstruction of an officer or "reasonable suspicion to detain the person or probable cause to arrest the person" for the act of photographing or taping a "public officer, peace officer, or executive officer, while the officer is in a public

place or the person taking the photograph or making the recording is in a place he or she has the right to be[.]" SB 411, Assembly Committee on Public Safety, June 30, 2015. P.1. *See also* California Penal Code § 148(g). Amended by Stats. 2015, Ch. 177, Sec. 2. (Effective January 1, 2016.)

## 2.  No facts evinced Plaintiff violated a "lawful" order

A violation of § 148(a)(1) requires that the criminal defendant  "'resist[ed], delay[ed], or obstruct[ed]' a police officer in the *lawful* exercise of his duties." *Smith v. City of Hemet*, 394 F.3d 689, 695 (9th Cir. 2005) (en banc) (alterations in original). "The longstanding rule in California . . . is that a defendant cannot be convicted of an offense against a peace officer '*engaged in . . . the performance of . . . [his or her] duties*' unless the officer was acting lawfully at the time the offense against the officer was committed." *In re Manuel G.*, 16 Cal. 4th 805, 815, (1997) (alteration in original) (internal citation omitted). Consequently, "148(a) does not make it a crime . . . to resist unlawful orders." *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013).

 "[A]n officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause." *Garcia*, 177 Cal. App. 4th at 819 (emphasis omitted).  Because Mr. White complied with the order to get behind the tape, there was no lawful order here that justified Mr. White's arrest.

It is not sufficient that Sgt. Kinney continued to watch Plaintiff, even if the Sergeant's attention was diverted by the presence of Mr. White.  Distracting an officer does not, by itself, support a violation of the law for "obstructing" a law enforcement officer in the "lawful" performance of his duties.  *Reed v. Lieurance*, 863 F.3d 1196 (9th Cir. 2017).  As in *Reed*, a reasonable conclusion here is that the Defendant Sgt. Kinney lacked probable cause to believe that Mr. White was obstructing police activity.  *Id*. at 1206; *see also In re Amanda A.,* 242 Cal. App.

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

1   4th 537, 549 (2015) (refusal to comply with order not a crime where "appellant's

2   refusal did not actually obstruct West's performance of her duties").

3       At all times, Mr. White was between 40 and 80 feet away from where the

4   police were engaged in the interaction with the homeless man in the tent.  At the

5   time of his arrest, Mr. White was approximately 40 feet away from the closest

6   corner where the street cleaning was occurring.

### 3.   The failure to comply with an order with "alacrity" does not support a violation of PC §148

9       The failure to comply with a police order with alacrity does not establish

10  probable cause for a charge of resisting arrest.   *People v. Quiroga,* 16 Cal. App.

11  4th 961, 966 (1993).  "California law . . . gives citizens considerable latitude in

12  confronting the police." *Mackinney v. Neilsen,* 69 F.3d at 1007 (9th Cir. 1991)

13  (citing *People v. Wetzel,* 11 Cal. 3d 104, 107- 09, (1974)).

14      The indisputable evidence in this instance shows that Plaintiff was fully

15  behind the yellow police tape, videotaping Defendant Kinney, when he was

16  arrested.  Plaintiff's earlier position outside of the tape does not support an arrest

17  for failure to comply with a "lawful" order.   *Smith v. Hemet,* 394 F.3d 689, 695-96

18  (9th Cir. 2005) ("the time of the arrest" does not include earlier law enforcement

19  contacts that might have been a lawful order; only the time at which the arrest is

20  made").

### 4.  The Use of Profanity will not Support an Arrest

22      "The First Amendment protects a significant amount of verbal criticism and

23  challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461

24  (1987).  "[T]he freedom of individuals verbally to oppose or challenge police

25  action without thereby risking arrest is one of the principal characteristics by which

26  we distinguish a free nation from a police state." *Id.* at 462-63.  Even angry and

27  profane speech directed at police officers is protected unless such speech is "shown

28  likely to produce a clear and present danger of a serious substantive evil that rises

9

far above public inconvenience, annoyance or unrest." *Id.* at 461-63, citations in *Hill* omitted.  *See also Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990).  No facts in this instance support such a "serious substantive evil."

### C. PLAINTIFF WAS UNLAWFULLY ARRESTED AND SEIZED IN VIOLATION OF THE FOURTH AMENDMENT AND CALIFORNIA CONSTITUTION ART. I, SEC. 7

As discussed above, probable cause did not exist to arrest Plaintiff under PC §148.  *See supra* Section B.  Thus, Plaintiff's arrest and seizure were unlawful.

### D. DEFENDANTS VIOLATED THE BANE ACT BY INTERFERING WITH PLAINTIFF'S RIGHT TO FREELY EXERCISE HIS CONSTITUTIONAL AND STATUTORY RIGHTS

California Civil Code §52.1, also known as the Bane Act, prohibits persons acting under color of law from interfering by means of threats, intimidation or coercion with the lawful exercise of federal or state constitutional and statutory rights.  Plaintiff is not required to show that the Defendant acted out of a discriminatory animus or intent.  "The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Simmons*, 7 Cal.App.5th 1113, 1125 (2016) (internal citation omitted).

In this instance, Defendants interfered with Plaintiff's First Amendment right to record the activity of police in a public place and his Fourth Amendment right to be free from unlawful seizure, as guaranteed under the United States and California constitutions.  Plaintiff need not show that the Defendants used violence or a threat of violence against him to establish either "threats," "intimidation," or "coercion" under California Civil Code §52.1.  *Gant v. City of Los Angeles*, 772 F.3d 608 (9th Cir. 2014).

"By its plain terms, Section 52.1 proscribes any 'interference with' or attempted 'interference with' protected rights carried out 'by threat, intimidation or coercion.'  Nothing in the text of the statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged.  Indeed, if the words of the statute are given their plain meaning, the required 'threat, intimidation or coercion' can never be 'independent' from the underlying violation or attempted violation of rights, because this element of fear-inducing conduct is simply the means of accomplishing the offending deed (the 'interference' or 'attempted interference')." *Cornell v. City and County of San Francisco*, __Cal.App.4th__, 2017 Cal.App. LEXIS 1011, *53 (Cal. Ct. App. 2017).

The Plaintiff's burden to show a violation of Civil Code 52.1 is slight.  "It should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component." *Venegas v. County of Los Angeles*, 32 Cal. 4th 820. 850–851 (2004).  It does not require a showing of discriminatory intent or animus by the Defendant. *Id.*

Where, as here, the Plaintiff claims an unreasonable seizure, no coercion need be shown independent from the coercion inherent in any seizure. *See Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018).  This is so because "the plain language of Section 52.1 gives no indication that the 'threat, intimidation, or coercion' must be independent from the constitutional violation." *Id.* at 1043. *See also B.B. v. Cty. of L.A.*, No. B264946, 2018 Cal. App. LEXIS 618, at *28 (July 10, 2018).  The coercion element of 52.1 is met by even low-level force, including tight handcuffing. *Lawrence v. City & County of San Francisco*, 14-cv-00821 MEI (N.D. Cal. 2017).

*//*

---

11

### E. PLAINTIFF WAS FALSELY ARRESTED AND IMPRISONED

Plaintiff also alleges that he was falsely arrested and falsely imprisoned. These claims are established by the same wrongful acts that support Plaintiff's claim that he was unlawfully seized.  *See Blankenhorn v. City of Orange*, 485 F.3d 463, 486–488 (9th Cir. 2007); *Robinson v. Solano Cnty*., 278 F.3d 1007, 1016–17(9th Cir. 2002) (en banc) (constitutional violations support state tort claims for false arrest and imprisonment, assault and battery, and there is no immunity for such claims).  There is no state law immunity for such claims either.  *Id.*

Under "established common law tort principles" false arrest and false imprisonment, wrongful "may be established by demonstrating a violation of a constitutional provision." *Katzberg v. Regents of the Univ. of Calif.*, 29 Cal. 4th 300, 303, n.1 (2002).  Under California law, Defendants bear "[t]he burden … to prove justification for the arrest." *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 592 (1979); CACI No. 1402.

There is no immunity from liability for falsely arresting or imprisoning a person under California law. *Venegas v. County of Los Angeles*, 153 Cal. App. 4th 1230, 1241–42 (2007).  This principle applies to Plaintiff's Bane Act claim, as well. *Id.* at 1236, 1240–44.  It is explicit in California Government Code §820.4, which provides:  "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law**.** *Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment*."  (Emphasis added).

Under the facts of this case, there is ample evidence to establish Plaintiff's false arrest and false imprisonment claims.  From the outset, there was no reasonable basis to believe that Plaintiff committed a crime.

### F. PLAINTIFF IS ENTITLED TO COMPENSATORY DAMAGES

"For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount

which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." Cal. Civ. Code § 3333. "Tort damages are awarded to compensate a plaintiff for all of the damages suffered as a legal result of the defendant's wrongful conduct." *North American Chemical Co. v. Superior Court*, 59 Cal. App. 4th 764, 786 (1997).

Compensatory damages may include such injuries as "… personal humiliation, mental anguish, and suffering." *Memphis Community School Dist. v. Stachura*, 477 U.S. 299 (1986) (quoting *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 350, (1974)). When a plaintiff indisputably suffers an actual injury, a compensatory damages award is mandatory. *Hazle v. Crofoot*, 727 F.3d 983, 991-92 (9th Cir.2013).

## G. PLAINTIFF IS ENTITLED TO PUNITIVE DAMAGES AGAINST SGT. KINNEY

Punitive damages are permitted against an individual defendant in a § 1983 case. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (citing *Smith v. Wade*, 461 U.S. 30, 49 (1983)). Punitive damages are available where the plaintiff proves by a preponderance of evidence that "the defendant's conduct that harmed the plaintiff was malicious, oppressive or in reckless disregard of the plaintiff's rights." *Id*.

Conduct is malicious if it is accompanied by ill will, or spite, or if it is for the purpose of injuring the plaintiff. Conduct is in reckless disregard of the plaintiff's rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety or rights, or if the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's rights under federal law. An act or omission is oppressive if the defendant injures or damages or otherwise violates the rights of the plaintiff with unnecessary harshness or severity, such as by the misuse or abuse of authority or power or by the taking advantage of some weakness or disability or misfortune of the plaintiff. *Id.* See also, Ninth Circuit Model Civil Jury Instr. 5.5.

"When a jury is instructed that it may award punitive damages for oppressive acts, the jury must consider the relative positions of power and authority between the parties and determine whether the defendant misused his power or authority … in the course of the wrongful conduct." *Dang*, 422 F.3d at 809.

## VI.  BIFURCATION OF ISSUES

The parties have agreed to bifurcate the trial in two phases: (1) liability and damages; and (2) punitive damages.

## VII.  JURY TRIAL

Plaintiff is entitled to a jury trial on the following claims for which he seeks compensatory damages: (1) First Amendment, freedom of speech; (2) First Amendment, retaliation; (3) Fourth Amendment, unlawful seizure; (4) Fourteenth Amendment, liberty deprivation; (5) Bane Act violation; (6) False Imprisonment; and (7) False Arrest.

Pursuant to Fed. R. Civ. Proc. 38, Plaintiff made a timely demand for a jury trial by including his demand in the initial complaint.  Compl. at p. 1; Dkt. #3.

## VIII.  ATTORNEY'S FEES

If Plaintiff prevails, he is entitled to reasonable attorney's fees pursuant to 42 U.S.C. § 1988.  Plaintiff's Bane Act claim, Cal. Civ. Code § 52.1, also provides for reasonable attorney's fees.  Similarly, California's Private Attorney General statute, Cal. Code Civ. Proc. § 1021.5, allows for recovery for attorney's fees.

## IX.  ABANDONMENT OF ISSUES

Plaintiff has not abandoned any claims that were raised in the initial complaint.  There have been no dispositive motions dismissing any of Plaintiff's claims.

//

//

//

MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**X.   ABANDONED PARTIES**

Plaintiff abandons Chief Charlie Beck as a Defendant in his official capacity.  The remaining Defendants include the City of Los Angeles and Sergeant Edward Kinney.

Dated: July 23, 2018

Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL
SCHONBRUN, SEPLOW, HARRIS & HOFFMAN LLP

By: _____/s/  Carol A. Sobel_____
Carol A. Sobel
*Attorney for Plaintiff*

MEMORANDUM OF CONTENTIONS OF FACT AND LAW