**MICHAEL N. FEUER**, City Attorney (SBN 111529x)
**THOMAS H. PETERS**, Chief Assistant City Attorney (SBN 163388)
**CORY M. BRENTE**, Supervising Assistant City Attorney (SBN 115453)
**ELIZABETH T. FITZGERALD**, Deputy City Attorney (SBN 158917)
200 N. Main Street; 6th Floor, City Hall East
Los Angeles, CA 90012
Email: Elizabeth.fitzgerald@lacity.org
Phone No.: (213) 978-7560, Fax No.: (213) 978-8785

*Attorneys for Defendant* **CITY OF LOS ANGELES, CHARLIE BECK AND SERGEANT KINNEY**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN "PETE" WHITE<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, in his official capacity; SERGEANT KINNEY and and DOES 1 through 10,<br><br>Defendants. | **CASE NO.: CV17-03306 SJ0-MRWx**<br>(Hon. S. James Otero)<br><br>**MOTION IN LIMINE NO. 1:**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PAST ARRESTS AND CONVICTIONS OF PLAINTIFF AND HIS WITNESSES**<br><br>Trial Date: August 21, 2018<br>Time: 9:00 a.m.<br>Courtroom: 10C |

**TO THIS HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Defendants CITY OF LOS ANGELES, CHIEF CHARLIE BECK, and SERGEANT EDWARD KINNEY hereby oppose Plaintiff's Motion in Limine No. 1 to exclude evidence of past arrests and convictions of Plaintiff and his witnesses.

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS OF THE CASE

On June 14, 2016, Los Angeles Police Department Sergeant Edward Kinney was assigned to the Resources Enhancement Service Enforcement Team (RESET), as the unit Assistant Officer in Charge. The City of Los Angeles, in response to a May 2012 Notice of Violation by the Los Angeles County Health Department and in order to create and maintain a safer, cleaner environment for the general public has tasked the L.A. Sanitation Watershed Protection Division, Environmental Enforcement and Emergency Response Unit with systematic clearing of the Skid Row area. Approximately every two months, for a seven day period, specific streets in the Skid Row area are designated for comprehensive cleaning. In order to accomplish this mission, notices form L.A. Sanitation are posted 48 hours in advance in the scheduled cleaning area. The posted notices inform the homeless population of the sanitation efforts, affording them ample time to remove their belongings, tents, encampments and bulky items, prior to the street closures. Entities from the Watershed and Clean Harbors utilize power washers and chemicals to accomplish the cleaning, to rid the area of harmful infectious materials and biohazardous waste that accumulates in the streets and sidewalks due to the overwhelming homeless population. Also, to provide protection to the city and contract workers from interference and physical assault, as they do their jobs.

RESET units were assigned to help facilitate the street closures, along with two units from Department of Transportation, to ensure there was no traffic on the road and no pedestrian traffic on the sidewalks. The hard closure was posted for 6th Street from Wall to Gladys. The street closure was complete with posted officers and yellow tape (Los Angeles Police Department Police Line Do Not Cross) was strung on 6th Street from Wall to Julian. No vehicle or pedestrian traffic was allowed to flow eastbound and all vehicle and pedestrian traffic was

2

disallowed through the intersection at San Julian. Due to the chemicals utilized in the cleaning and the health hazards such as needles, sharps and biohazardous materials and human feces that remain after the homeless persons in the area depart the location, citizens are not permitted to be present during the cleaning.

At 6:15 a.m., officers issued warnings to the transients in the area along 6th Street, advising them of the imminent closure. The hard closure began at 8:00 am. The City vehicles, dump trucks and equipment utilized by Street Services were pulling onto the street in preparation for the clean up. An individual refused to remove his make-shift lodging from the sidewalk designated for cleaning. The individual refused to exit his lodging and comply with officers in violation of 41.18(a)(1) LAMC, resisting/obstructing officers. After 6th Street and the Sn Julian intersection were blocked off and the Police Line tape were affixed to block pedestrian traffic, a field supervisor and several units were redeployed from the mission, to affect the arrest of this individual. A tactical plan was formulated to the arrest of the individual who refused to leave his make-shift lodging. His lodging was located on the south curb, mid-block between San Julian and Wall.

At approximately 8:20 a.m., Sergeant Kinney observed Darren "Pete" White, cross over the Police Line Tape and pass the crosswalk into the intersection at 6th and San Julian.

White was ordered to get back behind the yellow tape before officers responded with units to deal with the individual who would not leave his make-shift shelter. Sergeant Kinney advised White that he would be arrested if he did not comply.

After the delay and distraction caused by White, Sergeant Ramirez and several designated officers responded to the lodging of the individual who refused to leave. After continuing, to comply, the individual was placed under arrest after a short standoff, resulting in a use of force due to him resisting arrest. He was then arrested.

1   Suspect White was observed a third and fourth time, walking out into the
2   street, across the yellow tape to film the arrest of the homeless man who refused to
3   leave his make-shift shelter. Other persons observing White's disregard of the
4   yellow tape, began crossing the street. This created a potentially dangerous
5   situation for the officers and the public by diverting and delaying the police efforts
6   to apprehend and arrest the man who refused to leave his tent on the sidewalk.

7   Once that man on the sidewalk was taken into custody and while Sergeant
8   Ramirez and the officers were still in the process of controlling the scene,
9   Sergeant Kinney walked over to San Julian and warned the two individuals who
10  had crossed back behind the yellow tape, telling them that if they crossed again
11  they would be arrested. Sergeant Kinney advised these two persons that they were
12  free to film whatever they wished, but they could not cross the Police Line.

13  Sergeant Kinney had given White multiple warnings, including several
14  given from a distance, while attempting to deal with the homeless individual who
15  refused to leave his tent. Officer attention was diverted multiple times due to
16  White's actions, delaying officer efforts to deal with an uncooperative suspect in a
17  tent who refused to exit. Sergeant Kinney observed White pushing thru the
18  yellow tape, stretching it approximately eight feet into the intersection, defeating
19  the purpose of the tape. Due to all of White's actions, Sergeant Kinney walked
20  over to White and asked him for his identification. Kinney advised White that he
21  was going to be placed under arrest. Kinney walked back to the area where the
22  man in the tent was being arrested, and once that scene was under control, he
23  directed officers to arrest White under arrest for 148(a)(1) Penal Code, for
24  obstructing and delaying officers during the course of their duties.
25  ///
26  ///
27  ///
28

## II. PRIOR CONVICTIONS AND ARRESTS ARE RELEVANT TO BIAS AGAINST THE POLICE, CREDIBILITY AND PLAINTIFF'S DAMAGES

It is highly unlikely that Plaintiff or any of his witnesses will come forward and say that they respect the Los Angeles Police Department. Indeed, Plaintiff and the individuals in his organization have an extensive history of interfering with the lawful actions of the Los Angeles Police Department, as well as the Bureau of Sanitation, the Bureau of Street Services and despite their intentions to help the homeless, they have made the homeless situation far worse. Thus, plaintiff's criminal history and the history of his witnesses should be admissible to show bias and a lack of credibility.

Federal Rule of Evidence 609 provides for impeachment of the plaintiff himself by introducing evidence of conviction of crime. This may involve misdemeanors, older convictions and juvenile convictions. Plaintiff's blanket motion goes too far. See, e.g. *Saunders v City of Chicago* (2004, ND Ill) 320 F Supp 2d 735. (In civil rights action alleging excessive force, evidence of plaintiff's three prior felony convictions and of his misdemeanor conviction for resisting arrest in incident at issue were admissible; such convictions were routinely admitted to impeach and misdemeanor conviction for resisting arrest was admissible as prima facie evidence of facts on which conviction was based.)

FRE 609 states in pertinent part:

(a) In General. The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

(1) for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

(a) must be admitted, subject to Rule 403, in a civil case…; and

(2) for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the

5

1  crime required proving--or the witness's admitting--a dishonest act or false
2  statement.
3      (b) Limit on Using the Evidence After 10 Years. This subdivision (b)
4  applies if more than 10 years have passed since the witness's conviction or release
5  from confinement for it, whichever is later. Evidence of the conviction is
6  admissible only if:
7      (1) its probative value, supported by specific facts and circumstances,
8  substantially outweighs its prejudicial effect; and
9      (2) the proponent gives an adverse party reasonable written notice of the
10 intent to use it so that the party has a fair opportunity to contest its use.
11     (c) Juvenile Adjudications. Evidence of a juvenile adjudication is
12 admissible under this rule only if:
13     (1) it is offered in a criminal case;
14     (2) the adjudication was of a witness other than the defendant;
15     (3) an adult's conviction for that offense would be admissible to attack the
16 adult's credibility; and
17     (4) admitting the evidence is necessary to fairly determine guilt or
18 innocence.
19     Plaintiff has been arrested in the past.  Members of his organization have
20 been arrested as well.  L.A. CAN's dislike of the Los Angeles Police Department
21 is no secret, and the organization regularly sues the Department and the City of
22 Los Angeles.
23     Plaintiff's arrests, in the past, have been coupled with excessive profanity,
24 anger and rage toward LAPD and its officers.  Plaintiff's organization is premised
25 upon a dislike and disrespect of the Los Angeles Police Department. Plaintiff has
26 made his bed, now he must lie in it.  Defendants submit that defendants should be
27 able to ask Plaintiff and his witnesses about prior arrests and convictions as they
28 are highly relevant to bias, as well as credibility.

Evidence of these arrests are admissible under FRE Rule 404 because they are relevant (1) to show Plaintiff's bias, and the bias of his witnesses against the police, and motive to bring this action against the defendants; and (2) to enable the jury to assess Plaintiff's prior experiences being arrested in determining how much to award in emotional distress damages for the incident at issue here.

Plaintiff has been arrested and jailed in the past, and a jury should have an accurate barometer of the likely emotional distress, if any, plaintiff sustained in this incident.

## III. CONCLUSION

Plaintiff's motion goes too far in assuming there could be no use for plaintiff's and his witness' prior arrests and convictions. These events are relevant to bias and may be used to impeach Plaintiff or a witness, and may relate to plaintiff's damages. Such convictions will not be used to suggest that Plaintiff acted in conformity therewith under FRE 404. Defendants respectfully request that Plaintiff's motion be denied.

Dated: July 30, 2018

    Respectfully submitted,

    **MICHAEL N. FEUER**, City Attorney
    **THOMAS H. PETERS**, Chief Assistant City Attorney
    **CORY M. BRENTE**, Supervising Assist. City Attorney

    By: /S/*Elizabeth T. Fitzgerald*
        **ELIZABETH T. FITZGERALD**,
        Deputy City Attorney

    *Attorneys for Defendant* **CITY OF LOS ANGELES, CHIEF CHARLIE BECK and SERGEANT EDWARD KINNEY**