**MICHAEL N. FEUER**, City Attorney (SBN 111529x)
**THOMAS H. PETERS**, Chief Assistant City Attorney (SBN 163388)
**CORY M. BRENTE**, Supervising Assistant City Attorney (SBN 115453)
**ELIZABETH T. FITZGERALD**, Deputy City Attorney (SBN 158917)
200 N. Main Street; 6th Floor, City Hall East
Los Angeles, CA 90012
Email: Elizabeth.fitzgerald@lacity.org
Phone No.: (213) 978-7560, Fax No.: (213) 978-8785

*Attorneys for Defendant* **CITY OF LOS ANGELES, CHARLIE BECK AND SERGEANT KINNEY**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN "PETE" WHITE<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, in his official capacity; SERGEANT KINNEY and and DOES 1 through 10,<br><br>Defendants. | CASE NO.: CV17-03306 SJ0-MRWx<br>(Hon. S. James Otero)<br><br>**MOTION IN LIMINE NO. 2:**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF'S AND HIS ORGANIZATION'S PAST LAW-SUITS**<br><br>Trial Date: August 21, 2018<br>Time: 9:00 a.m.<br>Courtroom: 10C |

**TO THIS HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Defendants CITY OF LOS ANGELES, CHIEF CHARLIE BECK, and SERGEANT EDWARD KINNEY hereby oppose Plaintiff's Motion in Limine No. 2 to exclude evidence of Plaintiff and his organization's past lawsuits.

///

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS OF THE CASE

On June 14, 2016, Los Angeles Police Department Sergeant Edward Kinney was assigned to the Resources Enhancement Service Enforcement Team (RESET), as the unit Assistant Officer in Charge. The City of Los Angeles, in response to a May 2012 Notice of Violation by the Los Angeles County Health Department and in order to create and maintain a safer, cleaner environment for the general public has tasked the L.A. Sanitation Watershed Protection Division, Environmental Enforcement and Emergency Response Unit with systematic clearing of the Skid Row area. Approximately every two months, for a seven day period, specific streets in the Skid Row area are designated for comprehensive cleaning. In order to accomplish this mission, notices form L.A. Sanitation are posted 48 hours in advance in the scheduled cleaning area. The posted notices inform the homeless population of the sanitation efforts, affording them ample time to remove their belongings, tents, encampments and bulky items, prior to the street closures. Entities from the Watershed and Clean Harbors utilize power washers and chemicals to accomplish the cleaning, to rid the area of harmful infectious materials and biohazardous waste that accumulates in the streets and sidewalks due to the overwhelming homeless population. Also, to provide protection to the city and contract workers from interference and physical assault, as they do their jobs.

RESET units were assigned to help facilitate the street closures, along with two units from Department of Transportation, to ensure there was no traffic on the road and no pedestrian traffic on the sidewalks. The hard closure was posted for 6th Street from Wall to Gladys. The street closure was complete with posted officers and yellow tape (Los Angeles Police Department Police Line Do Not Cross) was strung on 6th Street from Wall to Julian. No vehicle or pedestrian traffic was allowed to flow eastbound and all vehicle and pedestrian traffic was

disallowed through the intersection at San Julian. Due to the chemicals utilized in the cleaning and the health hazards such as needles, sharps and biohazardous materials and human feces that remain after the homeless persons in the area depart the location, citizens are not permitted to be present during the cleaning.

At 6:15 a.m., officers issued warnings to the transients in the area along 6th Street, advising them of the imminent closure. The hard closure began at 8:00 am. The City vehicles, dump trucks and equipment utilized by Street Services were pulling onto the street in preparation for the clean up. An individual refused to remove his make-shift lodging from the sidewalk designated for cleaning. The individual refused to exit his lodging and comply with officers in violation of 41.18(a)(1) LAMC, resisting/obstructing officers. After 6th Street and the Sn Julian intersection were blocked off and the Police Line tape were affixed to block pedestrian traffic, a field supervisor and several units were redeployed from the mission, to affect the arrest of this individual. A tactical plan was formulated to the arrest of the individual who refused to leave his make-shift lodging. His lodging was located on the south curb, mid-block between San Julian and Wall.

At approximately 8:20 a.m., Sergeant Kinney observed Darren "Pete" White, cross over the Police Line Tape and pass the crosswalk into the intersection at 6th and San Julian.

White was ordered to get back behind the yellow tape before officers responded with units to deal with the individual who would not leave his make-shift shelter. Sergeant Kinney advised White that he would be arrested if he did not comply.

After the delay and distraction caused by White, Sergeant Ramirez and several designated officers responded to the lodging of the individual who refused to leave. After continuing to comply, the individual was placed under arrest after a short standoff, resulting in a use of force due to him resisting arrest. He was then arrested.

Suspect White was observed a third and fourth time, walking out into the street, across the yellow tape to film the arrest of the homeless man who refused to leave his make-shift shelter.  Other persons observing White's disregard of the yellow tape, began crossing the street. This created a potentially dangerous situation for the officers and the public by diverting and delaying the police efforts to apprehend and arrest the man who refused to leave his tent on the sidewalk.

Once that man on the sidewalk was taken into custody and while Sergeant Ramirez and the officers were still in the process of controlling the scene, Sergeant Kinney walked over to San Julian and warned the two individuals who had crossed back behind the yellow tape, telling them that if they crossed again they would be arrested.  Sergeant Kinney advised these two persons that they were free to film whatever they wished, but they could not cross the Police Line.

Sergeant Kinney had given White multiple warnings, including several given from a distance, while attempting to deal with the homeless individual who refused to leave his tent.  Officer attention was diverted multiple times due to White's actions, delaying officer efforts to deal with an uncooperative suspect in a tent who refused to exit.  Sergeant Kinney observed White pushing thru the yellow tape, stretching it approximately eight feet into the intersection, defeating the purpose of the tape.  Due to all of White's actions, Sergeant Kinney walked over to White and asked him for his identification. Kinney advised White that he was going to be placed under arrest.  Kinney walked back to the area where the man in the tent was being arrested, and once that scene was under control, he directed officers to arrest White under arrest for 148(a)(1) Penal Code, for obstructing and delaying officers during the course of their duties.

White, however, contends that he was arrested for exercising his First Amendment rights.

///

///

## II. FAIRNESS DICTATES THAT DEFENDANTS SHOULD BE ALLOWED TO MENTION PLAINTIFF'S PRIOR LAWSUITS AGAINST THE LOS ANGELES POLICE DEPARTMENT

Plaintiff's First Amended Complaint alleges that "The LAPD has repeatedly interfered with Plaintiff's right to film and photograph members of the LAPD in public places." (Para. 3). Plaintiff also alleges that "The LAPD has a policy, custom and practice of interfering with members of the public when they are engaged in the protected First Amendment activity of filming or photographing public policy activity." (Para. 4). Additionally, Plaintiff alleges that "the City has failed to develop adequate and lawful policies and to inform and train its personnel on this issue." (Para. 4) These allegations by Plaintiff are not based in reality. LAPD is filmed every single day by private citizens and this has been the case for years. LAPD operates in a society where everyone has a cell phone and everyone is able to film police at any time. LAPD films itself as well – there are in-car video recorders in police vehicles, and a substantial number of LAPD officers wear body-cam recorders. LAPD is trained that citizens are allowed to film them. Indeed, LA CAN, Pete White's organization, follows LAPD regularly and films them. They are allowed to do so under the First Amendment, and LAPD does not stop them, or any other individual who films the police.

Twice Pete White has testified in Federal Court trials where his organization and its members have alleged that LAPD violated the First Amendment by preventing videotaping of the police. Twice Pete White and his organization have lost. These losses are relevant and should be able to be mentioned to the jury if Plaintiff claims that LAPD has a policy of violating citizens' First Amendment rights who videotape the police or if he seeks to allege that LAPD repeatedly violates his First Amendment rights by preventing him from videotaping the police.

5

### III. CONCLUSION

In light of the forgoing argument, Defendants respectfully request this Honorable Court deny Plaintiff's Motion in Limine No. 2.

Dated: July 30, 2018

Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Supervising Assist. City Attorney

By: /S/*Elizabeth T. Fitzgerald*
 **ELIZABETH T. FITZGERALD**,
 Deputy City Attorney

*Attorneys for Defendant* **CITY OF LOS ANGELES, CHIEF CHARLIE BECK and SERGEANT EDWARD KINNEY**

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28