**MICHAEL N. FEUER**, City Attorney (SBN 111529x)
**THOMAS H. PETERS**, Chief Assistant City Attorney (SBN 163388)
**CORY M. BRENTE**, Supervising Assistant City Attorney (SBN 115453)
**ELIZABETH T. FITZGERALD**, Deputy City Attorney (SBN 158917)
200 N. Main Street; 6th Floor, City Hall East
Los Angeles, CA 90012
Email: Elizabeth.fitzgerald@lacity.org
Phone No.: (213) 978-7560, Fax No.: (213) 978-8785

*Attorneys for Defendant* **CITY OF LOS ANGELES, CHARLIE BECK AND SERGEANT KINNEY**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN "PETE" WHITE<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES; CHIEF CHARLIE BECK, in his official capacity; SERGEANT KINNEY and and DOES 1 through 10,<br><br>Defendants. | **CASE NO.: CV17-03306 SJ0-MRWx**<br>(Hon. S. James Otero)<br><br>**MOTION IN LIMINE NO. 4:**<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF PLAINTIFF CURSING FOLLOWING HIS ARREST**<br><br>Trial Date: August 21, 2018<br>Time: 9:00 a.m.<br>Courtroom: 10C |

**TO THIS HONORABLE COURT AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

Defendants CITY OF LOS ANGELES, CHIEF CHARLIE BECK, and SERGEANT EDWARD KINNEY hereby oppose Plaintiff's Motion in Limine No. 4 to exclude evidence of Plaintiff cursing following is arrest.

///

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. FACTS OF THE CASE

On June 14, 2016, Los Angeles Police Department Sergeant Edward Kinney was assigned to the Resources Enhancement Service Enforcement Team (RESET), as the unit Assistant Officer in Charge. The City of Los Angeles, in response to a May 2012 Notice of Violation by the Los Angeles County Health Department and in order to create and maintain a safer, cleaner environment for the general public has tasked the L.A. Sanitation Watershed Protection Division, Environmental Enforcement and Emergency Response Unit with systematic clearing of the Skid Row area. Approximately every two months, for a seven day period, specific streets in the Skid Row area are designated for comprehensive cleaning. In order to accomplish this mission, notices form L.A. Sanitation are posted 48 hours in advance in the scheduled cleaning area. The posted notices inform the homeless population of the sanitation efforts, affording them ample time to remove their belongings, tents, encampments and bulky items, prior to the street closures. Entities from the Watershed and Clean Harbors utilize power washers and chemicals to accomplish the cleaning, to rid the area of harmful infectious materials and biohazardous waste that accumulates in the streets and sidewalks due to the overwhelming homeless population. Also, to provide protection to the city and contract workers from interference and physical assault, as they do their jobs.

RESET units were assigned to help facilitate the street closures, along with two units from Department of Transportation, to ensure there was no traffic on the road and no pedestrian traffic on the sidewalks. The hard closure was posted for 6th Street from Wall to Gladys. The street closure was complete with posted officers and yellow tape (Los Angeles Police Department Police Line Do Not Cross) was strung on 6th Street from Wall to Julian. No vehicle or pedestrian traffic was allowed to flow eastbound and all vehicle and pedestrian traffic was

disallowed through the intersection at San Julian.  Due to the chemicals utilized in the cleaning and the health hazards such as needles, sharps and biohazardous materials and human feces that remain after the homeless persons in the area depart the location, citizens are not permitted to be present during the cleaning.

At 6:15 a.m., officers issued warnings to the transients in the area along 6th Street, advising them of the imminent closure.  The hard closure began at 8:00 am. The City vehicles, dump trucks and equipment utilized by Street Services were pulling onto the street in preparation for the clean up. An individual refused to remove his make-shift lodging from the sidewalk designated for cleaning.  The individual refused to exit his lodging and comply with officers in violation of 41.18(a)(1) LAMC, resisting/obstructing officers.  After 6th Street and the Sn Julian intersection were blocked off and the Police Line tape were affixed to block pedestrian traffic, a field supervisor and several units were redeployed from the mission, to affect the arrest of this individual.  A tactical plan was formulated to the arrest of the individual who refused to leave his make-shift lodging.  His lodging was located on the south curb, mid-block between San Julian and Wall.

At approximately 8:20 a.m., Sergeant Kinney observed Darren "Pete" White, cross over the Police Line Tape and pass the crosswalk into the intersection at 6th and San Julian.

White was ordered to get back behind the yellow tape before officers responded with units to deal with the individual who would not leave his make-shift shelter.  Sergeant Kinney advised White that he would be arrested if he did not comply.

After the delay and distraction caused by White, Sergeant Ramirez and several designated officers responded to the lodging of the individual who refused to leave.  After continuing to comply, the individual was placed under arrest after a short standoff, resulting in a use of force due to him resisting arrest.  He was then arrested.

Suspect White was observed a third and fourth time, walking out into the street, across the yellow tape to film the arrest of the homeless man who refused to leave his make-shift shelter.  Other persons observing White's disregard of the yellow tape, began crossing the street. This created a potentially dangerous situation for the officers and the public by diverting and delaying the police efforts to apprehend and arrest the man who refused to leave his tent on the sidewalk.

Once that man on the sidewalk was taken into custody and while Sergeant Ramirez and the officers were still in the process of controlling the scene, Sergeant Kinney walked over to San Julian and warned the two individuals who had crossed back behind the yellow tape, telling them that if they crossed again they would be arrested.  Sergeant Kinney advised these two persons that they were free to film whatever they wished, but they could not cross the Police Line.

Sergeant Kinney had given White multiple warnings, including several given from a distance, while attempting to deal with the homeless individual who refused to leave his tent.  Officer attention was diverted multiple times due to White's actions, delaying officer efforts to deal with an uncooperative suspect in a tent who refused to exit.  Sergeant Kinney observed White pushing thru the yellow tape, stretching it approximately eight feet into the intersection, defeating the purpose of the tape.  Due to all of White's actions, Sergeant Kinney walked over to White and asked him for his identification. Kinney advised White that he was going to be placed under arrest.  Kinney walked back to the area where the man in the tent was being arrested, and once that scene was under control, he directed officers to arrest White under arrest for 148(a)(1) Penal Code, for obstructing and delaying officers during the course of their duties.

White, however, contends that he was arrested for exercising his First Amendment rights because he was filming the police.  After being arrested White began to yell and  repeatedly swear and threaten officers.

///

## II. PLAINTIFF SHOULD NOT BE ALLOWED TO "SANITIZE" HIS OUTRAGEOUS CONDUCT AT THE TIME OF HIS ARREST

The officers involved in the arrest of Pete White were at all times, professional, patient and acted lawfully. Pete White is going to try to have the jury believe that he was arrested for no reason, that he is a model citizen, that he cooperated with the police and that the Police need to be punished. In fact, Pete White is asking for punitive damages against Sergeant Kinney, who did nothing more than direct two officers to make a lawful arrest of White.

However, it is imperative that the jury hear about Pete White's conduct after he was arrested. Indeed, he is claiming damages for having to do a "perp walk" to the station, and for having to wait to be booked and processed at the station. Thus, his conduct, post – arrest is relevant. His actions during that time are relevant and will show the jury a complete picture of how the police handled this incident, and what they had to deal with:

1- Pete White told the arresting officer "You are a piece of s###."
2- Pete White told the arresting officer "I don't give a f### about you."
3- Pete White continued to swear and called one of the arresting officers who had been involved in a shooting (and exonerated by a jury) "You are a murderer!" over and over.
4- Pete White said "Are you going to murder me too?"
5- Pete White said to Kinney: "You are going down – you are going to lose rank Sergeant Kinney – are you ready to lose rank?"
6- Pete White was shouting at the top of his lungs, attempting to incite others, repeatedly yelling: "This is the killer of brother Africa! He is a murderer! I am being arrested for video taping"

Pete White was not a model citizen that day. He did not cooperate with the police. He swore at them, he berated them, he threatened them, he was offensive and he was completely out of control. Defendant Kinney and the officers who

5

arrested White, on the other hand, were professional, were calm, and were not retaliating. The jury should be told the whole story –not the sanitized version that Pete White wants them to hear. Allowing Pete White to portray himself as a "good guy" and a "champion of justice" without mentioning his post arrest conduct would be highly prejudicial to defendants. Plaintiff claims this is a case about the First Amendment. The jury should hear about how Pete White chose to exercise his own First Amendment rights on that day.

## III. CONCLUSION

Defendants respectfully request that this Honorable Court deny the motion.

Dated: July 30, 2018

    Respectfully submitted,

**MICHAEL N. FEUER**, City Attorney
**THOMAS H. PETERS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Supervising Assist. City Attorney

By: /S/*Elizabeth T. Fitzgerald*
    **ELIZABETH T. FITZGERALD**,
    Deputy City Attorney

*Attorneys for Defendant* **CITY OF LOS ANGELES, CHIEF CHARLIE BECK and SERGEANT EDWARD KINNEY**